**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re: THE ROMAN CATHOLIC DIOCESE OF
ROCKVILLE CENTRE,

        Debtor,

CLAIMANT 90565,

        Claimant-Appellant,

v.

THE ROMAN CATHOLIC DIOCESE OF
ROCKVILLE CENTRE,

        Defendant-Appellee.

---------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/31/24

23-cv-6805 (CM)

**DECISION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER
ENTERED JULY 12, 2023**

McMahon, J.:

This appeal arises from the bankruptcy proceedings of the Roman Catholic Diocese of Rockville Centre, New York ("Debtor"). Appellant Claimant 90565 ("Claimant") challenges an order of the United States Bankruptcy Court for the Southern District of New York (Martin Glenn, C.B.J.), sustaining Debtor's objection to Claimant's proof of claim as untimely. For the reasons explained below, the Bankruptcy Court's order is AFFIRMED.

## BACKGROUND

Debtor Enters Bankruptcy

Debtor is the seat of the Roman Catholic Church in Nassau and Suffolk Counties, New York, and is the eighth-largest diocese in the United States when measured by the number of Catholics. JA-710 ¶ 2.[1]

Beginning in August 2019, approximately 200 lawsuits were brought against the Debtor under the New York Child Victims Act ("CVA"). JA710-11 ¶ 4. The CVA allowed individuals to bring formerly time-barred claims alleging sexual abuse of a minor. *See* N.Y. C.P.L.R. § 214-g (McKinney 2020). The deadline for bringing such claims was originally August 13, 2020; it was subsequently extended to August 14, 2021. *Id.*

On October 1, 2020, already facing hundreds of lawsuits that were brought against it as a result of CVA's revival of the statute of limitations, Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code and entered bankruptcy proceedings. *See In re The Roman Catholic Diocese of Rockville Centre*, No. 20-12345 (Bankr. S.D.N.Y.).

The Bar Date Order

On January 27, 2021, the Bankruptcy Court entered an Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof (the "Bar Date Order"). *See* JA-295. Under the Bar Date Order, the Bankruptcy Court set August 14, 2021, as the deadline for each individual holding a sex abuse claim to file a proof of such claim (the "Sexual Abuse Bar Date"). JA-296 ¶ 2. At the urging of the Official Committee of Unsecured Creditors (the "Committee"), the Sexual Abuse Bar Date set by the Bankruptcy Court was the last day for

---

[1] The parties' Joint Appendix, ECF No. 9, is cited as "JA__."

filing a lawsuit under the CVA. *See* N.Y. C.P.L.R § 214-g. Under the Bar Date Order, "Pursuant to Bankruptcy Rule 3003(c)(2), all holders of claims [who] fail to comply with this Order by timely filing a proof of claim in appropriate form shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." JA-300 ¶ 11.

The Bar Date Notice Program

On November 19, 2020 – two months before the Bar Date was set – the Debtor and the Committee jointly submitted a proposed program to publicize the Bankruptcy Court's Sexual Abuse Bar Date. The Bankruptcy Court approved this notice program as part of its Bar Date Order. *See* JA-303-08 ¶¶ 17-26.

Starting on January 29, 2021, Epiq Corporate Restructuring, LLC ("Epiq"), Debtor's claims and noticing agent, began serving copies of the Sexual Abuse Bar Date Notice on ***known*** sex abuse claimants. *See* JA-360, 457, 479, 499. To alert those claimants who were ***unknown*** to Debtor, the Sexual Abuse Bar Date Notice was also publicized through television, radio, online, print, social media, mailings, and community outreach. JA-612. This publication program included, among other things, approximately one-hundred and eighty-seven television spots (JA-614 ¶ 11), approximately one-hundred and thirty-three radio spots (*id.* ¶ 13), appearances in national magazines (JA-615 ¶ 16), in fifteen local newspapers (*id.* ¶¶ 17-18), four Catholic newspapers (*id.* ¶ 19), four out-of-state newspapers (JA-616 ¶ 20), online via tens of millions of banner advertisements (JA-616-17 ¶¶ 21-26), through image and video ads via Facebook/Instagram and Twitter (JA-617 ¶ 27), and through other social media to third parties (*id.* at ¶ 29).

On August 14, 2021, the deadline for filing proofs of claim passed. This happened also to be the deadline for filing suits under the revived statute of limitations for which the Legislature made provision in the CVA.

Appellant's Proof of Claim and Debtor's Objection

On August 19, 2022 – more than a year after the Sexual Abuse Bar Date deadline– Claimant filed a proof of claim, alleging that Claimant suffered sexual abuse at the hands of a member of the clergy of the Diocese of Rockville Center while a minor. JA-662. In bolded letters on its front page, Claimant's submitted proof of claim declares that "THIS FORM MUST BE RECEIVED NO LATER THAN AUGUST 14, 2021 AT 5:00 P.M. PREVAILING EASTERN TIME (THE 'SEXUAL ABUSE BAR DATE')". JA-663. The filing also indicates that Claimant signed the proof of claim on July 25, 2022 – ***nearly a month before the claim was filed in the bankruptcy court***. JA-992. As indicated on the proof of claim, Claimant had not filed any prior claim in the bankruptcy case or any prior civil action against the Debtor. JA-673.

On May 26, 2023, Debtor filed its Twelfth Omnibus Claim Objection (the "Objection") to various claims, including Claimant's, on the ground that they were untimely and should therefore be disallowed. JA-704.

On June 16, 2023, Claimant filed a Response to Debtor's Objection ("Response"), asking the Bankruptcy Court – under Federal Rule of Bankruptcy Procedure 9006 – for a retroactive enlargement of the filing period so as to render Claimant's proof of claim timely. JA-801. Claimant argued that he/she had shown "excusable neglect" for the late filing by satisfying the four factors set forth in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). Specifically, Claimant argued that: (i) allowing the claim would not prejudice Debtor; (ii) the length of the delay in filing the claim would not impact any judicial proceedings;

4

(iii) the reason for Claimant's late filing (i.e., coming to terms with his/her sexual abuse) excused any delay; and, (iv) the filing was done in good faith. JA-799-813.

In support of this argument, Claimant's counsel submitted a declaration, (JA-799), attaching three exhibits: (1) an email reflecting the date Claimant submitted a proof of claim (JA-821); (2) a joint press release statement by New York's Catholic bishops praising the CVA and condemning child sex abuse (JA-814); and (3) a letter from the Debtor's Bishop, addressed to members of the Diocese and dated October 1, 2020, announcing the filing of the Diocese's petition under Chapter 11 (JA-817). Claimant's counsel did not include any statement, sworn or otherwise, from his client, attesting to any reason why Claimant could not have filed the proof of claim earlier — whether prior to the bar date or at the time it was executed.

The Bankruptcy Court's Order

On July 12, 2023, the Bankruptcy Court sustained the Objection as to Claimant's proof of claim, as well as to five other untimely filed claims. *See* JA-928. In its Order, the Bankruptcy Court found that three of the four *Pioneer* factors favored these claimants—i.e., good faith, the danger of prejudice to the Debtor, and the possibility of a negative impact on judicial proceedings. *See* JA-941-45. However, the Court determined that the third *Pioneer* factor—i.e., the reason for the delay —did not weigh in favor of the claimants. *See* JA-945-49.

In arriving at this determination, the Bankruptcy Court made two findings.

First, the Bankruptcy Court found that the claimants, despite asserting that they lacked actual notice of the Sexual Abuse Bar Date, had "constructive notice" of that date, JA-947, because it had been "publicized through an extensive, Court-approved, publication program which included television, radio, online, print, social media, mailings, and community outreach." JA-946. The Bankruptcy Court added that "The fact that individualized notice was not provided to these

5

claimants does not negate the adequacy of the notice provided by the Debtor, and the Court does not find it relevant to excusable neglect." JA-947.

Second, the Bankruptcy Court was not persuaded by the claimants' argument "that the delay in bringing their claims was due to the fact that it took decades to come to terms with the abuse they had suffered, and to find the strength to seek legal redress." JA-948. While the Bankruptcy Court was "sympathetic" to this argument, it noted that, in cases finding excusable neglect, "the challenges [in coming to terms with the abuse that were ] complained of [had] caused confusion about the nature of the[ ] claims or the relevant deadlines or interfered with the notice process." The record demonstrated no such confusion or interference in the case of these claimants. JA948-49. The Court further noted that "hundreds of other claimants in this case were able to file their claims before the applicable bar date while likely facing similar difficulties," and observed that the claimants had failed to explain their "delay in filing the late claims after learning about the applicable bar date." *Id.* The Bankruptcy Court then sustained the timeliness Objection to the claims under consideration and disallowed them.

Claimant filed this appeal.

## LEGAL STANDARDS

A bankruptcy court's decision to permit or deny a late claim is reviewed for abuse of discretion. *In re Enron Corp.*, 419 F.3d 115, 124 (2d Cir. 2005). A bankruptcy court exceeds its allowable discretion "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001).

6

While courts are entitled to disallow late-filed claims pursuant to section 502(b)(9), Federal Bankruptcy Rule 9006(b)(1) also provides that a court may enlarge the time period for an act (like filing a claim), "on motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect." The late-filing claimant has the burden of proving excusable neglect. *Enron*, 419 F.3d at 121.

Whether neglect is "excusable" under Rule 9006(b)(1) is an equitable determination based on "all relevant circumstances surrounding the party's omissions." *Pioneer*, 507 U.S. at 395. A court weighs four factors in determining whether neglect may be considered "excusable": (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.* at 395.

The Second Circuit takes a "hard line" in applying the *Pioneer* test, one that focuses on and emphasizes the third factor: the reason for the delay, including whether it was within the reasonable control of the movant. *Enron*, 419 F.3d at 122 (*citing Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003)).

Under the Second Circuit's approach, "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule," and "where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Id.* (internal quotations omitted).

Excusable neglect has been found to exist "when the creditor, after conducting a reasonable amount of diligence, is justifiably confused or uncertain as to whether a particular transaction giving rise to a claim is or is not subject to the bar date order." *CVI GVF (Lux) Master S.a.r.l. v. Lehman Bros. Holdings Inc.*, 445 B.R. 137, 141 (S.D.N.Y. 2011) *aff'g In re Lehman Bros.*

7

*Holdings Inc.*, 433 B.R. 113, 126 (Bankr. S.D.N.Y. 2010) (describing that in both prior instances where the court found excusable neglect "the claimants consciously endeavored to comply with the Bar Date Order but were justifiably confused as to the application of the General Bar Date or the Program Securities Bar Date due to the circumstances surrounding the Lehman Program Securities list."). Further, a court "may consider a movant's severe illness when deciding whether an instance of neglect is excusable." *See, e.g., Fetik v. New York L. Sch.*, No. 97 Civ. 7746, 1999 WL 459805, at *4 (S.D.N.Y. June 29, 1999) (*citing Klapprott v. United States*, 335 U.S. 601, 614, (1949)).

## DISCUSSION

Before considering Claimant's arguments on appeal, there is a threshold issue which must be decided by this court.

In its opposition papers, the Appellee-Debtor argues that this Court should not even consider Claimant's arguments on appeal, as Claimant has not yet made a motion in the Bankruptcy Court to excuse the late filing of his/her claim. In support of its argument, Debtor points to the text of Rule 9006(b)(1) which states: "the court for ***cause shown*** may at any time in its discretion . . . ***on motion made*** after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." *Id.* (emphases added). Debtor does not claim that it has suffered any due process harm from Claimant's alleged procedural defalcation, nor that it has been denied the opportunity to be heard on Claimant's assertion of "excusable neglect." However, Debtor argues that, without a formal motion, "there is no basis for reinstating these claims under the bankruptcy code or rules." Appellee's Br. at 16-17.

This argument was considered and rejected by the Bankruptcy Court in its July 12, 2023, order:

> While the Debtor may be correct . . . finding for the Debtor on this point alone would likely just precipitate a new motion sequence on the same exact issue at a later date. In any event, the Court need not decide the issue as it has already concluded herein that the claimants have not shown excusable neglect under Bankruptcy Rule 9006(b)(1).

(JA-992).

This court agrees with the Bankruptcy Court's reasoning. Claimant made his excusable neglect argument – made all his *Pioneer* arguments – in papers opposing Debtor's Objection to the late filing. Furthermore, in his opposition papers, Claimant asked the Bankruptcy Court to excuse the late filing, relying for this request on Rule 9006. I suppose that this is not, technically, a "motion," as no document entitled "notice of cross motion" was filed. But Claimant asserted the same arguments that would have been made had a notice of motion been filed. And by sustaining the Objection and rejecting Claimant's request that the late filing be deemed timely, the Bankruptcy Court in effect decided a 9006(b)(1) motion. Holding that it was necessary for Claimant – who had already raised Rule 9006 and lost when opposing the Objection – to file a motion that would simply restate the same points would only serve to prolong the appeals process and unnecessarily waste judicial resources. In fact, this court believes that the opposition filing was the equivalent of making a formal motion under Rule 9006.

Moreover, although it appears that this is an issue of first impression within the Second Circuit, other appellate courts have considered a claimant's "excusable neglect" arguments – notwithstanding the absence of a formal motion under Bankruptcy Rule 9006(b)(1) – as long as the record reveals no issue about whether the opposing party has had notice and opportunity to respond. *See, e.g., In re Sheehan*, 253 F.3d 507, 515 (9th Cir. 2001) (evaluating "excusable neglect" arguments in the absence of a formal motion when "all of the arguments for and against a Rule 9006(b) motion to enlarge would be identical to those made [in the existing briefing]. This

9

suggests that the concerns of notice and opportunity to respond to the motion were satisfied in this case."); *W. Delta Oil Co. v. Fenasci*, 2004 WL 1770110 (E.D. La. Aug. 6, 2004) ("Appellant . . . was well aware that [claimants] desired to extend the administrative deadline . . . even if the attorneys never formally made such a motion. As a result, the bankruptcy court [properly and] liberally construed the motion requirement because Appellant had notice and an opportunity to respond."), *rev'd on other grounds*, 432 F.3d 347 (5th Cir. 2005).

There are no concerns over notice and opportunity here. Debtors have had adequate opportunity to respond to Claimant's arguments and do not suggest otherwise. Accordingly, the Court will consider Claimant's arguments on appeal.

## A. The Bankruptcy Court Did Not Abuse Its Discretion When Applying the *Pioneer* Factors

This court reviews the Bankruptcy Court's determination for abuse of discretion. *In re Enron Corp.*, 419 F.3d at 124.

Claimant argues that the Bankruptcy Court "acted in contravention of well-established caselaw in erroneously dismissing the [Claimant's] claim based *solely* on [the court's] narrow interpretation of [*Pioneer*'s] prong three – the reason for the delay." Appellant's Br. 9 (emphasis added). Claimant asserts that the Bankruptcy Court was required to consider the "synergy" of all four prongs, rather than just the third prong.

Claimant's argument misconstrues both what the Bankruptcy Court did and what Second Circuit law holds.

As it repeatedly made clear, the Bankruptcy Court did not base its dismissal *solely* on its consideration of the third *Pioneer* factor. Rather, the court considered all four factors. But it concluded that, because the most important *Pioneer* factor weighed against the Claimant, Claimant

10

was not entitled to file a late claim *despite* the fact that the other three factors favored Claimant's position. JA-941-46, 949.

The Bankruptcy Court explained, multiple times, that, "Whether neglect is 'excusable' under Rule 9006(b)(1) is an equitable determination based on '*all relevant circumstances* surrounding the party's omissions.'" JA-936, 40 (emphasis added). The Bankruptcy Court correctly deemed those "relevant circumstances" to be the four *Pioneer* factors. *Id.* After giving appropriate weight to all four factors – the three that favored Claimant and the one that, in the opinion of the learned Bankruptcy Judge, did not – the court concluded that "the equities do not weigh in favor of permitting the late-filed claims to proceed." JA-949.

The key element of the last sentence is "after giving *appropriate* weight" to each Pioneer factor. *Appropriate* weight is not *equal* weight. The Second Circuit has specifically held that "the four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a close[ ] case, the reason-for-delay factor will always be critical to the inquiry." *Enron*, 419 F.3d at 122 (internal quotations omitted). This is because, "in the typical case, the three other *Pioneer* factors (danger of prejudice, length of the delay and impact on judicial proceedings, and the movant's good faith) *usually weigh in favor of the party seeking the extension.*" *Id.* (emphasis added) (cleaned up).

Here, the Bankruptcy Court found that the third factor — "the reason for delay" — weighed against Claimant. The Second Circuit has identified this factor "as the most important *Pioneer* factor," and has instructed lower courts to treat it as essentially "dispositive." *Alexander v. Saul*, 5 F.4th 139, 149 (2d Cir. 2021) (holding that the district court did not abuse its discretion in denying claim based on excusable neglect even though the first, second, and fourth factors weighed in favor

11

of claimant). Thus, the fact that three of the four factors came out in Claimant's favor did not mean that Claimant was entitled to prevail, because the factor on which Clamant fell short was the essentially "dispositive" third factor. One does not count factors on fingers and give the victory to the party who lines up the largest number. In this Circuit, a court faced with a decision on whether to allow a late claim must focus most closely on the reason proffered for the delay. There can be no doubt that the learned Bankruptcy Judge did precisely that.

## B. **The Bankruptcy Court Did Not Abuse Its Discretion in Determining That the Third *Pioneer* Factor Did Not Favor Claimant[2]**

Claimant next contests the Bankruptcy Court's determination that the third *Pioneer* factor—the reason for the delay—did not favor the Claimant. In support, Claimant makes two arguments: that it received inadequate notice and that Claimant needed additional time to process the abuse suffered.

### 1. The Lack of Actual Notice Does Not Excuse Claimant's Late Filing

Claimant challenges the Bankruptcy Court's rejection of Claimant's argument that the delay was excusable because Claimant did not receive "actual notice" of the Sexual Abuse Bar Date.

The Bankruptcy Court determined that Claimant (and the other claimants who challenged the disallowance of their late-filed claims) could fairly be categorized as "unknown" creditors, so they only required constructive notice, not actual notice. JA-946-47 (*citing In re XO Commc'ns, Inc.*, 301 B.R. 782, 792 (Bankr. S.D.N.Y. 2003)). Since the Bankruptcy Court determined that Debtor's publication program was adequate to provide potential victims with constructive notice,

---

[2] Although Claimant briefs the other three *Pioneer* factors on appeal, Debtor does not dispute that these factors weigh in favor of Claimant and the court sees no reason to engage in a lengthy discussion of those factors; I affirm the Bankruptcy Court's conclusion that they weigh in Claimant's favor.

the learned Bankruptcy Judge concluded that, "the Debtor fulfilled the notice requirement and was not required to do anything further regarding notice." JA-947. Thus, the court concluded that "The fact that individualized notice was not provided to these claimants does not negate the adequacy of the notice provided by the Debtor, and *the Court does not find it relevant to excusable neglect*." *Id.* (emphasis added).

On appeal, Claimant does not challenge the Bankruptcy Court's findings of fact on this issue. Instead, Claimant argues that the Bankruptcy Court – when considering the reason for Claimant's delay – should have concluded that the receipt of constructive rather than actual notice of the Sexual Abuse Bar Date weighed in Claimant's favor, rather than finding it irrelevant to the issue of excusable neglect.

In support of its argument, Claimant cites to *In re Roman Cath. Diocese of Syracuse, New York*, 638 B.R. 33 (Bankr. N.D.N.Y. 2022) ("*Syracuse*"). In *Syracuse*, the court noted that "in spite of the robust notice protocols established by the Bar Date Order, Movant was unaware of the bar date until recently, as s/he did not receive notice of the bankruptcy and contacted his/her counsel just days before the expiration of the CVA Deadline to file a case in State court." *Id.* at 40. Thus, while "well established precedent [establishes] that lack of knowledge alone does not suffice to establish a right to relief from the bar date based on excusable neglect," the court found that the movant's lack of notice was still "a consideration in the overall analysis and partially explains Movant's reason for the delay in this case." *Id.*

This court agrees with the *Syracuse* court's reasoning, but finds it inapposite given the record (or lack of same) in this case. A creditor seeking to file a late claim "must explain the circumstances surrounding the delay in order to supply the Court with sufficient context to fully and adequately address the reason for the delay factor and the ultimate determination of whether

13

equities support the conclusion of excusable neglect." *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) (*citing Pioneer*, 507 U.S. at 388). Notice (or lack thereof) *can* be relevant to the reason for a claimant's delay; but it is only relevant to the extent it explains a claimant's ignorance of a claim bar date, and thus offers a "reason for the delay."

Here, unlike in Syracuse, the record contains no evidence about when Claimant first received notice of the bankruptcy and learned of the bar date. Instead, it contains evidence about notice of the bankruptcy in the form of the bishop's October 1, 2020, letter to members of the Diocese announcing the bankruptcy filing. Claimant does not disclaim knowledge of the bankruptcy.

Furthermore, as the Bankruptcy Court noted, Claimant did not provide any explanation for why the already late notice of claim was not filed until weeks after it was executed. The record reflects that the claimant executed the proof of claim on July 25, 2022. JA-992. As of that date, Claimant had clear notice that the bar date had already elapsed, as the proof of claim declared in bold-faced type on its front page that "THIS FORM MUST BE RECEIVED NO LATER THAN AUGUST 14, 2021 AT 5:00 P.M. PREVAILING EASTERN TIME (THE 'SEXUAL ABUSE BAR DATE')". JA-663. However, it was not until August 19, 2022, that Claimant's proof of claim was finally filed with the Bankruptcy Court. JA-992. Unlike the movant in *Syracuse*, Claimant

here was aware that the bar date had passed but nonetheless delayed filing the claim for nearly a month – a delay that cannot possibly be attributed to any purported lack of notice.

It was, therefore, perfectly appropriate for the Bankruptcy Court to conclude that constructive as opposed to actual notice from the Diocese was irrelevant to the Court's consideration of excusable neglect.

### 2. Claimant's Need to Process the Abuse

Next, Claimant argues that, in light of all the relevant circumstances, the Bankruptcy Court's determination that the third *Pioneer* factor did not favor the Claimant "cannot be located within the range of permissible decisions." *Zervos*, 252 F.3d at 169. In support, Claimant's proffers three "relevant circumstances" that Claimant argues mandate a finding in its favor on the third *Pioneer* factor – all of which boil down to, "it took me a long time to process what had happened to me, and the court should have concluded, for that reason, that delay was excusable."

First, Claimant argues that the bankruptcy court should have attributed dispositive weight to the "it took me a long time" argument because CVA specifically contemplated that abuse victims might delay coming forward. Claimant cites to the "Justification" section of the Sponsor Memo for Senate Bill S2440 (which codified the CVA):

> New York is one of the worst states in the nation for survivors of child sexual abuse. New York currently requires most survivors to file civil actions or criminal charges against their abusers by the age of 23 at most, long before most survivors report or come to terms with their abuse, which has been estimated to be as high as 52 years old on average.

(Appellant's Br. at 10-11).

The Legislature did indeed recognize the difficulty many victims of child sexual abuse have in coming forward to assert claims. But that did not translate into providing an unlimited period of time within which those victims could file lawsuits. When resurrecting the limitations

15

period for child victims, the Legislature selected an end date beyond which no further lawsuits could be filed. That date was August 14, 2021. To the extent Claimant relies on the Legislature's findings to argue for a lengthy extension of the bar date, the argument cannot be reconciled with the Legislature's choice of an end date to the extended limitations period – a date that happens to coincide with the Bar Date in this case.

Second, Claimant says the learned Bankruptcy Judge should have conformed its ruling to the one in *Syracuse*, where the bankruptcy court excused a delay of four months in filing a child sex abuse proof of claim, based, in part, on claimant's explanation that, "Prior to the expiration of the CVA deadline [claimant] was unable to reconcile the abuse s/he had to endure." *Id*. at 40. But in *Syracuse*, despite the urging of the Official Committee of Unsecured Creditors, the bankruptcy court declined to set the bar date that was coterminous with the CVA deadline. Instead, the bankruptcy court set the bar date as April 15, 2021 – four months before the CVA deadline. *Id.* at 37. The *Syracuse* claimant submitted an explanation in the record that he/she had proceeded under the mistaken belief that the CVA Deadline governed his/her sex abuse claim in the bankruptcy. The claimant also explained that, with the understanding that he/she was taking "legal action taken within [the applicable] time limit," he/she had commenced an action against the debtor in New York State Supreme Court one day prior to the expiration of the CVA deadline. *Id.* at 40. Finally, Claimant explained that "in spite of the robust notice protocols established by the Bar Date Order, [claimant] was unaware of the bar date until [informed by counsel], as s/he did not receive notice of the bankruptcy . . . ." *Id.* The only reason the *Syracuse* claimant eventually discovered the bar date order was because he/she was "contacted by counsel for the Debtor after the CVA deadline passed" in response to the claimant's filing of his/her state court action. Once debtor's counsel

provided the claimant with notice of the bar date, claimant promptly filed a claim with the bankruptcy court. *Id.*

All of these facts in *Syracuse* were set out in a sworn statement from the claimant in that case. *Id.* at 40-41. In this case, by contrast, the record on this issue is non-existent. There is no evidence of when Claimant became aware of the Bar Date (or the CVA deadline for filing suit); and counsel's unsworn assertion that Claimant was unable to come to terms with the alleged abuse until after the Sexual Abuse Bar Date is unsupported by any evidence from Claimant or anyone who was in a position to offer proof (a treating physician, for example). This argument is based solely on the unsworn statements of Claimant's counsel. Claimant offered no affidavit in support of his allegation of excusable neglect.

*Syracuse* is readily distinguishable from the instant case on other grounds as well. In *Syracuse*, the bar date for claims in the bankruptcy proceeding was set at four months earlier than the deadline to file state law claims under the CVA. While the *Syracuse* claimant filed his/her claim after the bankruptcy bar date, he did so in the "mistaken belief that the CVA Deadline governed his/her claim." The *Syracuse* court found that the Claimant's confusion was "plausible given the widespread publication of that date and the legal action taken within that time limit." *Syracuse*, 638 B.R. at 40 (internal quotations omitted). The court found that the claim was filed late due to confusion on the part of the claimant—a factor that was not "within the reasonable control" of the claimant. *Syracuse*, 638 B.R. at 40. Accordingly, and after noting that the claimant in that case had actually filed a timely suit under the CVA, the *Syracuse* court found that "***Under these limited circumstances***, the court finds Movant's error, ***coupled with*** the reluctance to disclose the sexual abuse, provides sufficient justification for the belated filing." *Id.* at 40-41 (emphasis added).

17

By contrast, here, there was no evidence of any "movant's error." Nor is there any evidence of confusion – or any possibility of the sort of that was persuasive in *Syracuse*. In this case, unlike in that case, the bar date for filing claims against the Diocese in the Bankruptcy Court was the same day as the CVA cutoff date. Claimant does not assert any confusion about the deadline for filing proofs of claim and he could not possibly do so. Indeed, Claimant does not even assert when he learned of the bar date. Moreover, unlike the *Syracuse* claimant, the Claimant here sat on his/her claim for nearly a month after executing a proof of claim. "A party who misses a court deadline, and who wishes relief based on equitable considerations, must act promptly to take the action that should have been taken earlier." *In re JCK Legacy Co.*, No. 20-10418 (MEW), 2022 WL 3009619, at *4 (Bankr. S.D.N.Y. July 28, 2022).

Finally, Claimant argues that, like the movant in *Syracuse* and some sex abuse survivors generally, "it took [Claimant's] receiving the care and treatment that was needed in order for [Claimant] to be able to finally address the trauma that the [Claimant] tried to repress throughout the [Claimant's] life. As soon as [Claimant] was able to come to terms with what happened to [Claimant] as a child, the process of filing the claim began." Appellant's Br. at 5. But again, the Bankruptcy Court had only counsel's unsworn statement in support of this assertion – nothing at all from Claimant.

Even so, as part of its calculus under the *Pioneer* test, the Bankruptcy Court considered Claimant's "need [for] ample time to process . . . trauma." Appellant's Reply Br. at 9. However, as the Bankruptcy Court observed, "hundreds of other claimants in this case were able to file their claims before the applicable bar date while likely facing similar difficulties." JA-948. The Court also noted that, in cases finding excusable neglect, "the challenges complained of [had] caused

confusion about the nature of the[ ] claims or the relevant deadlines or interfered with the notice process," none of which was the case here. JA-948.

So while "*Syracuse* suggests that the Bankruptcy Court could have exercised its discretion differently . . . it does not compel the conclusion that the Court went so far as to abuse its discretion." *In re Roman Cath. Diocese of Rockville Ctr.*, No. 23 CIV. 6708 (DEH), 2024 WL 303765 (S.D.N.Y. Jan. 26, 2024) at *3.

Claimant's arguments and the facts related thereto are identical to those considered by my colleague, Judge Ho, on an appeal from this same order of the Bankruptcy Court that was filed by another of the individuals whose late notice of claim was barred. *Diocese of Rockville Ctr., supra.* Like Judge Ho, I am "sympathetic to Claimant's position. But given the standard of review, the fact that this Court might have applied this factor differently as a matter of first impression does not mean that the Bankruptcy Court's decision amounted to legal error or that it 'cannot be located within the range of permissible decisions,' so as to justify reversal." *Id.* at *2 (internal citation omitted). I simply cannot say that, on this record, the Bankruptcy Court abused its discretion in sustaining the Objection and disallowing the claim.

### C. The Bankruptcy Court Did Not Err When It Failed to Address Claimant's Purported "Request for Alternative Relief"

Finally, Claimant contends that the Bankruptcy Court committed reversible error by failing to consider Claimant's "alternative request for relief," in the form of Claimant's request to "reserve[e] a right to participate in a late claims fund should one be established." Appellant's Br. 7.

Contrary to Claimant's assertion on appeal, the Bankruptcy Court was not required to rule on Claimant's perfunctory request, which was made in a single sentence in the conclusion section of Claimant's Response to the Debtor's Objection, *see* JA 811, rather than in a formal motion.

19

"[T]here is no requirement for a court to specifically address each and every argument raised by a party in papers filed with the Court." *Miller v. Metro. Life Ins. Co.*, No. 17 Civ. 7284 (AT), 2018 WL 5993477, at *2 (S.D.N.Y. Nov. 15, 2018). Moreover, Claimant sought an essentially advisory opinion on a hypothetical scenario; there was no "late claims fund" in existence at the time the Objection was considered. *See Sullivan v. Maha*, 834 F. App'x 619, 622 (2d Cir. 2020) ("A federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." (*quoting Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 110 (2d Cir. 2018) (en banc) (internal quotations omitted)). If a "late claims fund" is ever established I have no doubt that the Bankruptcy Court will consider an application from Claimant. But until such a fund is established – if it is ever established – no court can properly consider how it should be administered or who might qualify for participation.

## CONCLUSION

The order of the Bankruptcy Court is AFFIRMED.

This constitutes the decision and order of this court on appeal. The Clerk of Court is directed to remove this appeal from the court's list of open items.

Dated: May 31, 2024

_____
U.S.D.J.

BY ECF TO ALL COUNSEL